MR. JUSTICE MORRISON,
dissenting:
I respectfully dissent from the majority opinion. The majority first addresses the issue of whether the game played on a poker machine is “poker” as that term is generally known. We all agree that the Montana Card Games Act of 1972 does not define poker but permits the playing of poker.
The majority seems to rely upon two factors in determining that poker machines do not represent the game of poker contemplated by the statute. First of all, the majority notes that the machine does not utilize playing cards but rather electronic images. This distinction is made without reference to this Court’s decision in Treasure State Games, Inc. v. State (1976), 170 Mont. 189, 551 P.2d 1008. In that case we held keno machines to be a legal form of bingo. A fair reading of that decision would indicate approval of machines which electronically simulate otherwise lawful games. Therefore, if, in playing a poker machine, one is playing a game that would otherwise be poker, if played against another person or against the house, then the game should be legal.
Secondly, the majority deems the game not to be poker when played upon a machine for the reason that skill is not required. No legal authority is cited for this assertion. In fact, there is evidence in the record that “showdown” poker is recognized. Obviously “showdown” does not require skill.
There is testimony in this record to show that the game played on the poker machine is, in fact, a game involving skill. The evidence offered by the defendant shows that the chances of winning with skillful play are 3 to 1 better than the chances of random play.
The majority opinion conveniently avoids referring to the trial court’s findings of fact. Finding number 3(h) provides:
“Whether the player wins or loses depends not only on the “luck of the draw” as determined by the odds previously *145 discussed herein, but also on the knowledge of those odds by the player, and his skill in applying those odds to the particular hand with which he is confronted;”
This finding binds our Court, unless clearly erroneous. The majority fails to address the finding and fails to support its bald conclusion that the game is different from poker in that it does not involve skill.
The trial court further found in Finding 3(i) that:
“Save and except for the electronic aspects of the game herein before described, the game of poker as played on this machine is essentially the game of poker as that term is anciently and commonly understood (Palmer v. State, 38 St.Rptr. 447, 450 [625 P.2d 550] (March, 1982)); . . .”
Again the majority fails to address the finding. If the finding is supported by the record, and it clearly is, then poker machines are lawful under the authority of Treasure State Games v. State, supra.
I will not address the issue of whether poker machines are slot machines. Clearly if they are lawful under the Montana Card Games Act, then they are not unlawful slot machines. Since I would find they are lawful under the Montana Card Games Act, the issue of slot machines is clearly resolved in favor of the defendant.
The majority gratuitously determines that poker cannot be played against the house. The majority need not have reached this issue since they found that, in any event, the game being played in a poker machine was not poker at all. However, since the majority has seen fit to give an advisory opinion on this issue, I feel compelled to answer.
There is absolutely nothing in the Montana Card Game Act which prohibits playing against the house. The majority apparently reasons that since the machine keeps twenty percent a player must lose a certain percent of the time. The Legislature clearly intended to bar games where such a result follows. However, it seems to me that the money kept by the machine is simply a “rake-off” which is specifically authorized by Section 23-5-313.
*146 I can only conclude that the majority opinion fails to analyze the trial court’s findings, the evidence which supports those findings, and the applicable statutes for the reason that the majority opinion would thereby fail. What we have here is judicial legislation which seems to have done the following:
1. Banned all card games that do not require skill. This would include “showdown” or “fun poker.”
2. Banned all card games played against the house.
3. Prohibited the house from taking a percentage of the pot as a “rakeoff” although such is specifically provided for by statute.
By holding that poker machines are actually illegal slot machines, the court allows for confiscation of the machines. This seems to be a particularly harsh result in light of the fact that poker machines were purchased at a cost of several thousand dollars each based upon this Court’s opinion in Treasure State Games, Inc. v. State, supra, and the Attorney General’s opinion which followed. On August 15, 1979 Mike Greely, Attorney General of Montana, issued an opinion which stated:
“You recently requested my opinion on the legality of an electronic gambling device that simulates the game of poker. Enclosed are copies of two letters to the Lewis and Clark County Attorney which set out my views on these machines. While I agree that these machines are very close to being slot machines and that their proliferation may not be in the public interest, we are bound by the Supreme Court’s controlling decision in the Treasure State Games case, which is discussed in the letters. Until either the Legislature or the Court sees fit to change the law, electronic poker machines appear to be legal.”
If the Court wishes to overrule the Treasure State Games case, then it should do so specifically. Of course the majority never mentions the case. If the Court wishes to change the law by judicial fiat then the Court should only do so prospectively. Poker machines were purchased in good faith *147 reliance upon the Attorney General’s opinion and upon previous decisions of this Court. To declare these machines now to be slot machines and allow their confiscation seems to me to be taking property without due process of law.
I would hope the County Attorneys would at least permit owners of poker machines to have some time in which to dispose of them since they were legal at the time they were purchased.